UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DEFLORA LAKE DEVELOPMENT
ASSOCIATES, INC.,

                                    Debtor.

------------------------------------------------------X

HYDE PARK, A WISCONSIN LIMITED
PARTNERSHIP,

                                    Appellant,

          v.

DEFLORA LAKE DEVELOPMENT
ASSOCIATES, INC., *et al.*,

                                    Appellees.

No. 20-CV-1422 (KMK)

OPINION & ORDER

Appearances:

Elizabeth Anne Haas, Esq.
Elizabeth A. Haas Attorney at Law
Tallman, NY
*Counsel for Debtor-Appellee DeFlora Lake Development Associates, Inc.*

Leonard Alan Benowich, Esq.
Benowich Law, LLP
White Plains, NY
*Counsel for Appellant Hyde Park, A Wisconsin Limited Partnership*

Lewis D. Wrobel, Esq.
Poughkeepsie, NY
*Pro Se Appellee*

KENNETH M. KARAS, District Judge:

Hyde Park, A Wisconsin Limited Partnership ("Hyde Park" or "Appellant" or "Defendant") appeals from the January 10, 2020 Order of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which found that an interest-bearing account maintained by Lewis D. Wrobel, Esq. ("Wrobel") and bearing the tax identification number of DeFlora Lake Development Associates, Inc. ("DeFlora" or "Debtor" or "Appellee" or "Plaintiff"; the "DeFlora Account") was property of Debtor's estate pursuant to 11 U.S.C. § 541, and ordered that the funds in the DeFlora Account be disbursed to DeFlora's counsel. (Decision & Order ("Order") 4 (Bankr. Dkt. No. 74).)[1]  For the reasons set forth below, the matter is remanded to the Bankruptcy Court.

## I.  Background

In 1980, Debtor's predecessor Caesar DeFlora ("Caesar") contracted to sell to Hyde Park seven parcels of property in Dutchess County, New York (the "Property"). (Joint Pre-Trial Order ("PTO") ¶ 15 (Bankr. Dkt. No. 32); Bankr. Dkt. No. 78-1.)  Between 1985 and 1995, Caesar transferred his interest in the Property to Debtor. (PTO ¶ 16.)  Debtor and Hyde Park amended the contract several times, including with a 1995 amendment (the "Amendment"). (*Id.* ¶ 17.)  The Amendment states that Hyde Park owes $8,404,989.43 to Debtor, which will "be repaid solely from the proceeds of the management of the Property, and from the sale(s) of the Property and from other credits and reductions described herein." (Designation of the R. on Appeal Pursuant to Bankruptcy Rule 8006 ("R. Designation") Ex. JX-6 ("Amendment") 3 (Bankr. Dkt. No. 78-6).)  The Amendment establishes a formula for distributing proceeds from

---

[1] The Court uses "Bankr. Dkt." to refer to filings on the adversary Bankruptcy Court docket, *DeFlora Lake Development Associates, Inc. v. Hyde Park, a Wisconsin Limited Partnership, et al.*, Dkt. No. 17-9006 (Bankr. S.D.N.Y.).

sales of the Property.  (*Id*. at 11–12.)  "All net proceeds on sale of any part of or a parcel of the Property shall be paid to [Debtor] as a reduction of [Hyde Park's] indebtedness to [Debtor] . . . until the gross sales price and credits . . . on all accumulated sales is equal to $1,800,000."  (*Id*. at 11.)  "After closings of gross sales including credits . . . greater than $1,800,000 . . . [Hyde Park] shall retain an amount equal to fifty (50%) percent of any net sale price and the remaining balance available shall be paid to [Debtor], as a continued reduction of [Hyde Park's] obligation . . . ."  (*Id*.)  Under the Amendment, "[Debtor] may proceed with [a] sale" even if "[Hyde Park] do[es] not consent."  (*Id*. at 6–7.)  In the event of such a contested sale, Hyde Park's interests are protected by an appraisal process.  (*Id*. at 7–8.)  First, "each party shall select an . . . [a]ppraiser to ascertain the [f]air [m]arket [v]alue of the parcel being sold as of the date of the transfer of such sale, free and clear of all liens and taxes."  (*Id*. at 7.)  If the parties remain unable to agree on a fair market value, "the two appraisers shall select a third . . . [a]ppraiser, who shall determine the [f]air [m]arket [v]alue for purposes of Hyde Park's credit . . . ."  (*Id*. at 8.)  As indicated, the fair market value establishes the amount of a "credit" to be reduced both from Hyde Park's $8,404,989.43 debt, and from the $1,800,000 in net proceeds to be paid exclusively to Debtor.  (*See id*. at 11.)  The Amendment designates Wrobel as the agent holding the deeds in escrow until instructed by Debtor or Hyde Park as to their disposition.  (*Id*. at 14; PTO ¶ 19.)

On March 10, 1999, Debtor notified Hyde Park that it intended to sell three parcels of the Property (the "Parcels") for $900,000.  (PTO ¶ 21.)  This sale was motivated at least in part by the need to pay real estate taxes to avoid a tax foreclosure.  (Transcript ("Trial Day 1") 48 (Bankr. Dkt. No. 49); Transcript ("Trial Day 2") 56–57 (Bankr. Dkt. No. 40).)  Hyde Park objected that the price was too low.  (PTO ¶ 21.)  "Ultimately, on September 21 and 23, 1999, Hyde Park sent letters to Wrobel stating that it would not object to delivering its quitclaim deeds

to allow [the parcels] to be sold if $207,116 were delivered to and held by Wrobel." (*Id.* ¶ 22;
*see also* Bankr. Dkt. Nos. 78-11, 78-12.)  Hyde Park did not seek an appraisal.  (Trial Day 2 at
100.)  Wrobel deposited the $207,116 (the "Wrobel Funds") into two accounts, the DeFlora
Account, and an account bearing Hyde Park's tax identification number (the "Hyde Park
Account").  (PTO ¶ 23; *see also* Trial Day 1 at 55.)[2]  From the proceeds of the sale, $450,000
was paid to Dutchess County to settle real estate tax obligations.  (Trial Day 1 at 49, 130; Trial
Day 2 at 98, 104.)  These taxes were Debtor's responsibility.  (Trial Day 1 at 93; Amendment 4.)

In September 2008, Debtor sued Hyde Park in federal court, in part seeking a declaratory
judgment that it was entitled to the Wrobel Funds, and Hyde Park counter-claimed, in part
seeking the same relief.  (PTO ¶ 27; Bankr. Dkt. No. 78-15.)  Both Parties' claims were
dismissed as time barred.  (PTO ¶ 28.)  In July 2013, Debtor sued a second time, and the lawsuit
was again dismissed.  (PTO ¶ 30–31.)  In March 2017, Debtor filed a Chapter 11 bankruptcy
petition, (First Am. Compl. ("FAC") ¶ 2 (Bankr. Dkt. No. 8)), and initiated the current adversary
proceeding seeking a declaration that it is entitled to the Wrobel Funds and turnover of the same,
(*id.* ¶¶ 37–45).

On July 19, 2017, the Bankruptcy Court denied Hyde Park's motion to dismiss.
(Memorandum Decision & Order Den. Mot. to Dismiss ("MTD Op.") (Bankr. Dkt. No. 18).)  In
so doing, the Bankruptcy Court held that "[a]lthough the contract claim . . . was time-barred, that
does not extinguish the parties' respective interests, whatever they may be, in the escrow funds."
(*Id.* at 16.)  Neither Party challenges this conclusion on appeal.  (*See* Statement of the Issues To

---

[2] As of November 2017, there was $114,016.16 in the DeFlora Account, and $116,606.75
in the Hyde Park Account.  (PTO ¶ 25.)

Be Presented on Appeal ("HP Statement") (Dkt. No. 2-1); Pl.-Appellee's Counter Designation Statement of Issues To Be Presented on Appeal ("Debtor Statement") (Dkt. No. 5-1).)

The Bankruptcy Court held a two-day trial on Debtor's claims on May 9 and May 10, 2018, and principals for both Debtor and Hyde Park testified.  (*See generally* Trial Day 1; Trial Day 2.)  Following live testimony, the Bankruptcy Court reached two conclusions.  First, it held that the Wrobel Funds were not held in escrow, and thus were available as a potential asset of the estate.  (Trial Day 1 at 222–23.)  The Bankruptcy Court explained that payments made from the DeFlora and Hyde Park Accounts to Wrobel and to New York State would have been impossible under New York law if the funds were held in escrow.  (*Id*. at 223; Trial Day 2 at 117.)  Hyde Park took the opposite position in its pre-trial memorandum.  (Def. Hyde Park's Pre-Trial Mem. of Law ("HP's Pre-Trial Mem.") 5–13 (Bankr. Dkt. No. 37).)  However, on appeal, it does not dispute that the Wrobel Funds are potentially available to the bankruptcy estate.  (*See* HP Statement.)[3]  Second, the Bankruptcy Court held that it would "look to the contract to determine how the funds should be divided," "[e]ven though the contract is no longer enforceable."  (Trial Day 2 at 117.)  Debtor objected to this at a subsequent conference, arguing that "the parties waived the appraiser" because they did not select one after the sale.  (Transcript ("Jan. 24, 2019 Conf.") 8 (Bankr. Dkt. No. 68).)  However, Debtor has not filed a notice of appeal, and does not otherwise dispute the Bankruptcy Court's reliance on the contract to determine how the Wrobel Funds should be distributed.  (*See* Debtor Statement.)

It is undisputed that Hyde Park received $534,231.58 in credit both towards the debt and towards the $1.8 million in proceeds designated solely for Debtor, based on prior sales of parts of

---

[3] Because Hyde Park does not challenge this conclusion of the Bankruptcy Court, the Court accepts Debtor's argument that "the [Wrobel] Fund[s] could be property of the estate." (Pl.-Appellee's Brief ("Debtor's Mem.") 16 (Dkt. No. 10); *see id*. at 13–16.)

the Property.  (*See* Trial Day 2 at 118; Order 2.)  To determine consistent with the contract the credits Hyde Park was entitled to as a result of the sale of the Parcels, the Bankruptcy Court ordered the parties "to comply with the provision of the [Amendment]" and "obtain an appraisal."  (Trial Day 2 at 118.)  Debtor's appraisal valued the three parcels at $1,530,000.  (Bankr. Dkt. No. 45.)  Hyde Park's appraisal valued the same at $3,100,000.  (Bankr. Dkt. No. 46.)  The Parties obtained a third, controlling appraisal of $2,520,000.  (Bankr. Dkt. No. 71.)

Based on these figures, the Bankruptcy Court reached two findings.  First, it found, consistent with the contract, that "Hyde Park is entitled to a credit of $2,520,000 for the sale of the property," and, thus, "that the initial threshold of [$1.8] million is reached."  (Transcript ("Dec. 3, 2019 Conf.") 12 (Bankr. Dkt. No. 73); *see also* Order 3.)  Debtor at a post-appraisal conference argued that it was entitled to $1.8 million "in his pocket," because the "Amendment . . . provided that DeFlora gets the money from the sale up to $1.8 million."  (Dec. 3, 2019 Conf. 8.)  As noted, however, Debtor has not filed a notice of appeal, and it concedes that "the Bankruptcy Court properly concluded that the [t]hreshold of $1,800,000.00 had been reached . . . ."  (Debtor's Mem. 18.)[4]  Second, the Bankruptcy Court held that Hyde Park "is entitled to an amount equal to one half of the net sale proceed held by Wrobel," (Order 4), and that "the Wrobel [F]unds . . . are to be split 50/50 according to the contract," (Dec. 3, 2019 Conf. 12).

---

[4] Debtor argues that, in negotiating the Amendment, "the [P]arties were trying to reach an agreement for the orderly sale of the subject parcels which would give DeFlora at least $1,800,000.00 from the sales and after that point DeFlora and Hyde Park would share equally in the net proceeds."  (Debtor's Mem. 21.)  The Court does not view this argument as contradicting Debtor's concession that the $1.8 million threshold was reached.  Instead, it interprets this argument as contextualizing Debtor's position that the contract does not entitle Hyde Park to a full half of the proceeds as soon as the threshold is passed—i.e. that Hyde Park should not receive $0 on $1,799,999 in gross proceeds, but then $900,001 on $1,800,002 in gross proceeds. (*See* Debtor's Mem. 20–21.)  As described below, the Court takes no stance on Debtor's position.

This finding is the subject of Hyde Park's appeal, and the sole focus of this Opinion & Order. (*See* HP Statement.)

Consistent with its findings, the Bankruptcy Court held that the DeFlora Account is property of DeFlora's bankruptcy estate and that the Hyde Park Account is not property of DeFlora's bankruptcy estate. (Order 4.) It also ordered Wrobel to close the two accounts and release the funds to the Parties' respective counsels. (*Id*.) In addition, the Bankruptcy Court stated that it "truly believe[d] in the credibility of both witnesses." (Trial Day 2 at 117.)

This appeal followed. Hyde Park filed its Notice of Appeal on February 19, 2020. (Dkt. No. 1.) On the same date, Hyde Park filed its Designation of the Record on Appeal and Statement of the Issues To Be Presented on Appeal. (Dkt. No. 2; HP Statement.) On February 21, 2020, Debtor filed its Designation of Additional Documents To Be Included in the Record of Appeal and Counter Designation Statement of Issues To Be Presented on Appeal. (Dkt. No. 5; Debtor Statement.) Hyde Park filed its opening brief on March 16, 2020, (Br. of Def.-Appellant Hyde Park, LP ("HP's Mem.") (Dkt. No. 7)), Debtor opposed on May 13, 2020, (Debtor's Mem.), and Hyde Park filed its reply on May 22, 2020, (Reply Br. of Def.-Appellant Hyde Park, LP ("HP's Reply") (Dkt. No. 11)).

## II.  Discussion

The Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 158(a)(1). *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700 (S.D.N.Y. 2014). "This Court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL

183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017).[5]  Where the record does not reflect "the reasoning for the bankruptcy court's decision," the Court may remand for further proceedings.  *In re Kaye*, No. 11-CV-1674, 2011 WL 5024345, at *3 (E.D. La. Oct. 20, 2011); *see also In re Werner*, No. 08-BK-11153, 2015 WL 5048151, at *6 (B.A.P. 9th Cir. Aug. 25, 2015) (holding that "[a]dditional findings are necessary here" and noting "the requirement to make specific findings"); *In re S.M. Acquisition Co.*, No. 03-CV-7072, 2004 WL 1151575, at *4 (N.D. Ill. Apr. 29, 2004) (remanding "to the [b]ankruptcy [c]ourt for further evidentiary proceedings, if necessary, and for a more specific statement of its reasons"); *cf. Madison Nat'l Bank v. Chiapelli*, 131 B.R. 354, 358 (E.D. Mich. 1991) (remanding "for sufficient explanation of the form of the order entered").  The Court finds that the Bankruptcy Court did not adequately explain its ruling, and remands for further proceedings.

Both Debtor and Hyde Park have colorable arguments regarding their entitlement to the Wrobel Funds under the Amendment.  Hyde Park argues that it is entitled to half of the credits above $1.8 million.  (*See* HP's Mem. 27–28.)  Prior sales of $524,231.58 plus an appraisal-based credit of $2,525,000 equal $3,049,231.58 in total credits.  (*Id.*)  These total credits are $1,249,231.58 greater than $1.8 million.  (*Id.*)  Hyde Park claims it is entitled to half of this excess, which is more than $600,000, far in excess of the full amount of the Wrobel Funds.  (*Id.*; PTO ¶ 25.)  Separately, once the $1.8 million threshold is passed, the Amendment entitles Hyde Park to "retain an amount equal to fifty (50%) percent of any net sale price," and requires that "amounts due [Hyde Park] . . . be paid in cash by [Debtor]."  (Amendment 11–12.)  Hyde Park

---

[5] While the quoted language, formerly found in Rule 8013, is no longer contained in the Federal Bankruptcy Rules of Procedure, "logic still compels the same conclusion with respect to the appellate powers of the District Court."  *In re Madoff*, 2016 WL 183492, at *8 n.14 (citation omitted).

argues that this language suggests that it is entitled to receive its share of any available cash first, with Debtor entitled only to the remainder.  (HP's Mem. 28.)  In addition, Hyde Park argues that proceeds from selling the Parcels were used, in part, to satisfy Debtor's tax and other obligations, further strengthening its claim to the balance.  (*Id*. at 6, 25–27.)

By contrast, Debtor contrasts "net" and "gross" proceeds, arguing that the Amendment obligates the Parties to split the remaining funds after Debtor is "paid for the sale."  (Debtor's Mem. 20.)  Separately, Debtor argues that Hyde Park is entitled to retain a portion of the proceeds only "[a]fter" total credits exceed $1.8 million.  (Debtor's Mem. 19–20.)  Since the $1.8 million threshold was passed only upon closing, Hyde Park is not entitled to any of the funds.  (*Id*.)

The record contains no indication that the Bankruptcy Court considered and resolved this dispute.  It reflects that the Bankruptcy Court determined to apply the Amendment to decide each Party's entitlement.  (*See* Dec. 3, 2019 Conf. 12 (noting that "the Wrobel [F]unds . . . are to be split . . . according to the contract"); Order 3 (explaining that the Bankruptcy Court "determined that it would look to [the] Amendment . . . to determine how the Wrobel Funds were to be divided between the [P]arties").)  The record further reflects that the Bankruptcy Court found that the Debtor and Hyde Park were each entitled to half of the Wrobel Funds.  (*See* Dec. 3, 2019 Conf. 12 (noting that "the Wrobel [F]unds . . . are to be split 50/50 . . . about $115,300 each"); Order 3–4 ("[T]he [Bankruptcy] Court concluded that Hyde Park . . . is entitled to an amount equal to one half of the net sale proceed held by Wrobel.  The [Bankruptcy] Court further concluded the Debtor is entitled to an amount equal to one half of the net sales proceeds held by Wrobel, as property of the bankruptcy estate.").)  Nowhere in the record does the Bankruptcy Court explain the link between these two conclusions.  Indeed, the record suggests that the

9

Bankruptcy Court received neither briefing nor argument on the Parties' dispute about the proper division of the Wrobel Funds under the Amendment. (*See* Dec. 3, 2019 Conf. 13 ("Mr. Benowich: Your Honor, can I be heard on --; The Court: I just ruled.").) Thus, the Court remands for "further . . . proceedings, if necessary, and for a more specific statement of [the Bankruptcy Court's] reasons" for concluding that the Amendment suggests a 50/50 split of the Wrobel Funds. *In re S.M. Acquisition*, 2004 WL 1151575, at *4.

The Court declines to itself interpret the Amendment for two reasons. First, the Amendment appears to be ambiguous. By way of example, the Amendment provides for the 50/50 division of "any net sale price," but does not define this phrase. The price could be "net" of gross sales including credits. (*Cf*. HP's Mem. 27–28.) It could also refer to the "net" funds remaining after the expenses associated with a sale. (*Cf*. Debtor's Mem. 20.) Where a contract is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (citation omitted). "Because these are issues of fact essential to any decision" on the meaning of the Amendment, it is appropriate that the Court leave "determination of these issues [to] the [B]ankruptcy [C]ourt in the first instance." *In re Kelton Motors, Inc*., 97 F.3d 22, 28 (2d Cir. 1996). Second, because both Debtor's and Hyde Park's claims to the Wrobel Funds are time-barred, (*see* PTO ¶ 28), the Bankruptcy Court found that "the [Amendment] is no longer enforceable," (Trial Day 2 at 117). Thus, the Bankruptcy Court's choice to "look to the [Amendment] to determine how the funds should be divided," (*id.*) was an exercise of its equitable discretion, *cf. Carruthers v. Flaum*, 450 F. Supp. 2d 288, 310 (S.D.N.Y. 2006) ("[T]he [equitable] doctrine [of partial performance] holds that an otherwise unenforceable contract for the sale of land may be enforced in equity if plaintiff has relied on

defendant's promise and performed some or all of the oral agreement.").  Decisions made "under such equitable doctrines are committed to the sound discretion of the Bankruptcy Court," and "should be addressed in the first instance by the Bankruptcy Court."  *In re Enron N. Am. Corp.*, 312 B.R. 27, 34 (S.D.N.Y. 2004).  Thus, the Court takes no position on the Parties' arguments regarding the proper division of the Wrobel Funds under the Amendment.

### III.  Conclusion

For the reasons given herein, this case is remanded to the Bankruptcy Court for further proceedings, if necessary, and for further explanation of its reasoning with respect to the aforementioned issues.  The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

DATED:      March 29, 2021
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE